IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD M. COTT<br>3613 Patty Court<br>Bonita Springs, FL 34134, | Civil Action No. _____<br><br>Judge _____ |
| Plaintiff, | CIVIL COMPLAINT (JURY TRIAL DEMANDED) |
| vs. | |
| WALDRON, LP<br>1150 Old Pond Road<br>Bridgeville, PA 15017, | |
| Defendant. | |

NOW COMES Plaintiff Richard M. Cott ("Cott"), by and through his attorney, and for his Complaint hereby avers, alleges and prays:

## PARTIES AND JURISDICTION

1. Cott is a citizen and resident of Florida, with his primary place of business in Florida.

2. Upon information and belief, at all relevant times herein, Defendant Waldron, LP ("Waldron") was a Pennsylvania limited partnership, with its principal place of business in Bridgeville, Allegheny County, Pa. Waldron employed Cott in Allegheny County, Pa.

3. This Court has jurisdiction, pursuant to 28 U.S.C. §1331, because this case involves a federal question (disability discrimination under the Americans with Disabilities Act.) The Court also has jurisdiction, pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this is a civil action between citizens of different states. Finally, the Court has jurisdiction over Cott's state claims (in addition to diversity jurisdiction) pursuant to the Court's supplemental jurisdiction in 28 U.S.C. §1367.

4. Pursuant to 28 U.S.C. §1391, venue is proper in this Court because a substantial

part of the alleged events and omissions giving rise to Cott's claims purportedly occurred within this judicial district and because Allegheny County is where Cott performed services for Defendant.

## THE DISPUTE

5. This is an action for: (1) Disability discrimination; and (2) wrongful discharge in violation of public policy.

6. Plaintiff seeks damages, costs and attorney's fees from Defendant for its wrongful and unlawful acts.

## FACTUAL ALLEGATIONS

7. Plaintiff is a financial advisor. He was hired by Waldron on August 12, 2013, purportedly to be Waldron's Business Development Officer.

8. On numerous occasions between August 2013 and May 2014, Cott requested reasonable accommodations, including days off from work to deal with the exacerbation of his disabilities (bulging discs, bad back, colitis, insomnia, severe emotional distress.) Those requests for days off were requests that he not have to work 7 days every week. Those requests to not to have to work 7 days every week, while his disabilities were exacerbated, were denied and no reasonable accommodation was offered. By rejecting those requests, Waldron not only refused to reasonably accommodate Cott's disabilities, it also dramatically-compromised and undermined his ability to perform his job effectively.

9. On numerous occasions between August 2013 and May 2014, Cott reported to Waldron that it was violating the law Specifically, Cott reported that Waldron: (a) Materially-misrepresented the amount of assets it managed to clients and prospective clients (claiming to manage $4 billion in assets, when it actually managed less than $1.3 billion); (b) materially-misrepresented to clients and prospective clients that clients had not left Waldron because of

2

poor investment performance when, in fact, those clients had left due to poor investment performance; (c) materially-misrepresented to clients and prospective clients that the average account in its multi-family office (MFO) was $250 million (in fact, it was less than $100 million); (d) materially-misrepresented to clients and prospective clients that it had a "pristine" regulatory record and strategic partnerships; (e) provided the aforementioned false information to financial entities including Barrons, the Wall Street Journal, the SEC and the Pennsylvania Department of Banking and Securities (PDBS), as well as bogus AUM figures; (f) directed employees not to speak or cooperate with the SEC or PDBS; (g) directed employees to hide documents and information substantiating Waldron's false statements from the SEC and PDBS; (h) unlawfully charged clients for an electronic account system that did not work or provide accurate account information; (i) told referral sources Waldron would "increase their revenue" – alluding to unlawful kickbacks. Cott's reports constitute reports of unlawful conduct under the Securities and Exchange Act of 1934 and its accompanying regulations (the "SEC Act") and the Pennsylvania Securities Act of 1972 and its accompanying regulations (the "PSA Act".)

10. On occasions between August 2013 and May 2014, Cott reported that Waldron was selling life insurance and having individuals sell life insurance without a license -- including myself at Waldron's express instruction – in violation of Pennsylvania's insurance laws and regulations, specifically Title 31 of the Pennsylvania Code (and the regulations promulgated thereunder)("Title 31.")

11. After Cott made the reports set forth in Paragraphs 8-10, his pay was cut, he was denied reasonable accommodations for my disabilities, and he was bullied, belittled, reprimanded, threatened and, ultimately, terminated.

12. On May 9, 2014, Cott asked to take sick leave due to his "series of medical

conditions…to recovery physically". Cott was summarily terminated the next day.

13. Cott was terminated (a) because of his disabilities and (b) in retaliation for seeking reasonable accommodations and for reporting the violations of Pennsylvania law described above.

## COUNT ONE
## DISABILITY DISCRMINATION

14. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 13 of his Complaint as if fully rewritten herein.

15. Cott was a qualified person with disabilities and was able to perform the essential functions of his job with reasonable accommodations – had he been given them instead of denied them.

16. Cott engaged in protected activity when he requested reasonable accommodations (including days off from working 7 days per week) and reported he was being denied accommodations and being discriminated against (even if he did not use the magic word "discrimination.")

17. Waldron failed and refused to reasonably accommodate Cott's disabilities in any way.

18. Waldron's failure and refusal prevented Cott from successfully-performing his job.

19. Waldron discriminated and retaliated against Cott by cutting his pay, denying him reasonable accommodation(s) for his disabilities, bullying, belittling, reprimanding and threatening because of his disabilities and his protected activities and, ultimately terminating him.

20. Waldron discriminated and retaliated against Cott by terminating him in May

2014.

21.     As a proximate result of Waldron's discrimination and retaliation, Cott has suffered economic loss, health problems/exacerbation of his disabilities, and emotional distress.

22.     Waldron's discrimination and retaliation described above were done in violation of the Americans with Disabilities Act and the Pennsylvania Human Relations Act. Waldron's discrimination and retaliation described above were done with ill-will, malice, bad faith, etc. – entitling Cott to punitive damages under the ADA. Cott is also entitled to attorney's fees on his ADA and PHRA claims by statute.

23.     Waldron filed this suit within 90 days of receiving his *Notice of Right to Sue* from the EEOC, and his charge was dual-filed with the EEOC and PHRC.

## COUNT TWO
## WRONGFUL DISCHARGE

24.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 23 of his Complaint as if fully rewritten herein.

25.     Clear public policies exist and are manifested in federal and Pennsylvania statutes and regulations – i.e., the SEC Act, the PSA Act, and Title 31.

26.     Waldron's retaliation against and termination of Cott jeopardize those public policies.

27.     Waldron has no overriding justification for using Cott's SEC Act, PSA Act and Title 31 activities as a factor in its decision to retaliate against and terminate Cott.

28.     Cott's SEC Act, PSA Act and Title 31 activities were a substantial factor in Waldron's decision to retaliate against and terminate Cott.

29.     As a proximate result of Waldron's retaliating against and terminating Cott, he has suffered economic loss, health problems/exacerbation of his disabilities, and emotional

distress.

30.     Waldron's retaliation against and termination of Cott were done with ill-will, malice, bad faith, etc. – entitling Cott to punitive damages and attorney's fees.

WHEREFORE, Plaintiff prays:

That the Court award damages, costs and attorney's fees to Plaintiff and against Defendant, in an amount to be fully determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Barry Y. Freeman
**(pro hac vice admission to be filed)**
Barry Y. Freeman (Ohio #0062040)
Buckingham, Doolittle & Burroughs, LLC
1375 E. 9th Street, Suite 1700
Cleveland, OH 44114
d:  216.736.4223
f:  216.615.3023
c:  216.410.2844
bfreeman@bdblaw.com

Attorney for Plaintiff

CL2:436455_v3